CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/10/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

KEVIN FORTIER, individually on behalf of himself, and on behalf of all others similarly situated, *et al.*,

                Plaintiffs,

v.

LIBERTY UNIVERSITY, INC.,
Serve: David M. Corry, Registered Agent
1971 University Blvd.
Liberty University
Lynchburg, VA 24515

                Defendant.

Civil Action No. 6:23CV00069

**JURY TRIAL DEMANDED**

**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**

## COLLECTIVE ACTION COMPLAINT

Plaintiff, Kevin Fortier ("Plaintiff" or "Fortier"), individually, and on behalf of all others similarly situated, respectfully moves for judgment against Defendant Liberty University, Inc. ("Liberty" or "Defendant").

Plaintiff seeks to recover compensation, double and/or triple damages, and attorneys' fees and costs pursuant to the provisions of Sections 206, 207, and 216(b) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 216(b), the Virginia Wage Payment Act, Va. Code § 40.1-29, and the Virginia Overtime Wage Act, Va. Code § 40.1-29.2.

Plaintiff's Fair Labor Standards Act, Virginia Wage Payment Act, and Virginia Overtime Wage Act claims are asserted as a collective action under Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), and Va. Code 40.1-29(J). The following allegations are based on personal

knowledge as to Plaintiff's own conduct and experiences and are made on information and belief as to the acts of others.

## Introduction

1. This is a collective action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, Virginia Wage Payment Act ("VWPA"), Va. Code § 40.1-29, and the Virginia Overtime Wage Act ("VOWA"), Va. Code § 40.1-29.2, to recover regular and overtime wages, liquidated damages, triple damages where available, and other applicable damages brought pursuant to federal and state wage laws.

2. This Complaint seeks relief for claims for unpaid overtime in violation of the FLSA and VOWA and for unpaid regular wages in violation of VWPA arising out of work that Plaintiff and others similarly situated performed for the benefit and at the direction of Liberty.

3. Plaintiff brings this action as a collective action on behalf of himself and others similarly situated. Plaintiff asks that if this case is not certified as a collective action that he be permitted to proceed individually with his claims.

## Jurisdiction and Venue

4. This Court has jurisdiction pursuant to 29 U.S.C. § 216(b) and (c) in that Plaintiff may bring this action in any appropriate United States District Court. This Court also possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as the acts and/or omissions giving rise to Plaintiff's state law claims arose from the same basis of operative fact and same controversy under the law. Pursuant to 28 U.S.C. § 1367(a), the VOWA and VWPA claims are so related to the FLSA claim involving original jurisdiction that the VOWA and VWPA claims form part of the same case or controversy.

5. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to this lawsuit have taken place in the Lynchburg Division of the Western District of Virginia, and Defendant's principal office address is 1971 University Blvd, Lynchburg, Virginia, 24515.

6. Defendant is subject to personal jurisdiction in the Commonwealth of Virginia.

### Parties

7. Fortier is currently a resident of South Carolina and was, at the times relevant hereto, a resident of Lynchburg, Virginia.

8. Fortier performed labor within the last three years for the benefit of, at the direction of, and under the supervision of Liberty in Lynchburg, Virginia. Fortier was an "employee" of Liberty as defined by the FLSA and Virginia law from approximately August 2017 until June 30, 2023.

9. Liberty University, Inc. is a Virginia nonstock corporation with its principal place of business in Lynchburg, Virginia.

10. Defendant meets the definition of "employer" with respect to the FLSA, VWPA, and VOWA.

11. Defendant is an "enterprise" as defined by the FLSA in 29 U.S.C. § 203(r)(1).

12. Defendant is an enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA in 29 U.S.C. § 203(s)(1)(A).

13. Defendant has made more than $500,000 in sales made or business done in the calendar year.

**Factual Allegations**

14. Fortier was employed by Liberty from approximately August 2017 until June 30, 2023.

15. Fortier initially worked in the Rec Centers Department from approximately August 2017 through November 2019; from approximately November 2019 through June 30, 2023, Fortier worked in the Intramural Sports Department.

16. During Fortier's employment, his title varied between Athletic Training Coordinator, Associate Athletic Trainer, and Associate Director of Athletic Training.

17. From approximately August 2017 until November 2022, Fortier was paid on an hourly basis.

18. In the Intramural Sports Department ("the Department"), Fortier's supervisors, Steve Chamberlin, Associate Director of Intramural Sports, and Ed Barnhouse, Director of Intramural Sports, and Chris Misiano, Vice President of Campus Recreation and Logistics, capped the Department's employees' pay as follows:

    a. Fortier's and Fortier's co-equal, the Intramural Sports Coordinator, were paid for no more than 40 hours per week;

    b. Student Managers were paid for no more than 35 hours per week; and,

    c. Student Workers were paid for no more than 18 hours per week.

19. Fortier was over medical assistance during the intramural games; thus, if a player was injured, Fortier would provide immediate care, evaluate the injury, determine if the player needed to be referred to a medical provider, and/or if the player was cleared to return to the game.

20. The Intramural Sports Coordinator oversaw the Student Managers; thus, if Student Managers had questions, the Student Managers were to go to the Intermural Sports Coordinator.

The Intramural Sports Coordinator was present at the night games so that the Director and Associate Director would not have to be present.

21. The Student Managers each were assigned an intramural sport; there were six (6) intramural sports. For each intramural sport, the Student Managers oversaw the referees and scorekeepers, would ensure that each game ran smoothly, and oversaw administrative issues such as teams wanting to forfeit games.

22. The Student Workers kept score and refereed intramural games.

23. At the times relevant hereto, all employees beneath Associate Director Chamberlin in the Intramural Sports Department were paid on an hourly basis for hours worked, up to their caps, and if employees were required to work over their cap, Associate Director Chamberlin would go into the system on Mondays, before processing payroll, and reduce the employees' hours such that the time records reflected that the employee only worked the cap.

24. Fortier spoke to Director Barnhouse on several occasions concerning the unlawful failure to pay wages.

25. However, the unlawful pay practice continued, and Director Barnhouse continued to reduce all employees' time to their respective caps if the cap was exceeded.

26. Director Barnhouse stated in response to Fortier's reports that the Vice President did not give him (Director Barnhouse) the budget to pay overtime hours, among other excuses.

27. Fortier, and other employees, were subjected to this unlawful pay practice from approximately November 2019 until November 2022.

28. In November 2022, Fortier was switched to being paid on a salary basis and was no longer clocking his hours.

29. Upon information and belief, after Fortier was transitioned to being paid on a salary basis, other Intramural Sports Department employees continued to be paid on an hourly basis and continued to be subject to unlawful wage theft.

30. During the past three (3) years, Liberty has employed approximately forty to fifty (40-50) Intramural Sports Department employees ("Intramural Sports Employees").

31. Plaintiff and those similarly situated were employed by Liberty as Intramural Sports Employees, providing services to Liberty's students, and were all paid, and not paid, pursuant to the same pay practices.

32. Liberty was the employer with respect to Plaintiff and those similarly situated.

33. Plaintiff and those similarly situated were all paid on an hourly basis during the times for which damages are sought for each individual.

34. Plaintiff and those similarly situated often worked over their respective caps.

35. Plaintiff and those similarly situated were never paid for more than their respective caps.

36. During the time Fortier was hourly, Fortier was paid by Liberty at the rate of approximately $20 to $21 per hour.

37. Fortier worked, on average, forty (40) to forty-five (45) hours per week; on occasion, Fortier worked closer to fifty (50) hours per week.

38. Plaintiff was never paid for any hours over forty (40).

39. Plaintiff was never paid for overtime compensation.

40. For example, for the period May 17, 2021 through May 28, 2021, Fortier worked 81.51 hours:



However, Fortier's time was reduced by Director Barnhouse to 80.00 hours, and Fortier was only paid for 80.00 hours:



In order to accomplish this, Director Barnhouse reduced the hours Fortier worked on May 28, 2021 from 8.23 hours, which is what Fortier actually worked, to 6.72 hours.

41. Fortier participated in a meeting with Steve Foster and Steven Ferro from Liberty's Human Resources Department on or about April 14, 2023, concerning the foregoing unlawful pay practices.

42. Thereafter, on April 20, 2023, Fortier sent the following email to Foster and Ferro:

Mr. Foster and Mr. Ferro,

Attached is a word document with a brief summary of the discussion we had last week and some screenshots of my timesaver. There is much more that I could say about the matter, but I figured I would keep it short and expand upon what I wrote at your request. Thank you again for taking the time to speak with me and please let me know if I could be of further assistance.

Attached to the email was a zip file of numerous time records for Fortier, and a Word document entitled "Hr conversation.docx," containing the following language:

Mr. Foster and Mr. Ferro,

As we discussed on Friday 4/14/23, here is a summary of the information that we discussed regarding the changing of employee timecards. A brief background of who I am is that I have been an employee of Liberty University for about 5 years with the first two being under Rec Centers and the last three being under intramural sports as an athletic trainer. During this time, I have had the hours on my timecard reduced on a weekly basis while under intramural sports, and on very rare occasions while under Rec Centers. The focus of this email will be on the intramural sports department as it affected myself and other employees on a larger scale. The actions taken in the intramural sports department, led by Ed Barnhouse and Steve Chamberlin, are made to reduce full-time hourly employee hours down to 40, student manager hours down to 35, and student worker hours down to 18 hours regardless of how many hours they actually worked.

I have had two conversations that I remember with Ed about this matter. I asked him why the department takes these actions, and he said that he was instructed to do so by Chris Misiano who is the Vice President of Campus Recreation and Logistics. Regarding the reasoning as to why this was permissible, Ed stated the reasoning was that the employees are well taken care of and that student workers get free tuition which was a justifiable payment for any extra hours that they accrue and are not paid for. Ed also stated that a part of the reasoning given to him by Chris

as to why employees are kept to the hours listed above is so the human resources department doesn't become upset with Campus Recreation and the treatment of the employees who work there as there are time limits that are placed on these positions. Ed also said that Chris does not allow his department an overtime budget or that it was a very minimal budget. I was not there for any of the conversations that Ed and Chris have had regarding this topic.

The limits on our hours and the requirements of our jobs have led multiple employees to have to work hours without compensation. One such occasion that I can remember that happened recently was when I had to cover a women's flag football tournament where both the student manager and I had the majority of our hours eliminated on our timesaver from that event. I have not documented every change to my timesaver at Liberty University, but attached will be some of the screenshots that can prove these actions have been occurring.

In closing, I hope that you are able to thoroughly investigate this matter as well as take appropriate actions to rectify the situation with those affected and ensure that these injustices never occur again. Please let me know if you have any questions regarding this email or would like further clarification or information about what has been occurring.

43. Steve Foster, Executive Vice President Human Resources, answered on April 29, 2023, stating:

Hi Kevin,

Sorry for our delayed response, but we are looking into this. Thanks for sending everything over!

We will get with you if we need anything else.

44. Having heard nothing further, Fortier followed up with Foster and Ferro on July 31, 2023:

Mr. Foster and Mr. Ferro,

I just wanted to follow up regarding the conversation that we had in April to see if there has been any progress or if a conclusion has been reached. I appreciate the time and consideration that you have given me, and I look forward to hearing your response.

45. Fortier never received a response to his July 31, 2023 email.

46. Fortier has never been paid for the hours that were removed from his time records. Upon information and belief, no Intramural Sports Employee has been paid for the time that was removed from their time records.

47. Defendant had actual knowledge of the time worked by Intramural Sports Employees based on the time records. Therefore, Defendant willfully and/or knowingly violated the FLSA and/or Virginia law by intentionally failing to pay regular and overtime wages despite requiring Intramural Sports Employees to work such hours.

48. At all relevant times, Defendant intended to deprive Plaintiff and similarly situated individuals of regular and overtime pay to which they were entitled or acted with reckless disregard for the rights of Plaintiff and those similarly situated.

## Collective Action Allegations

49. Plaintiff brings his FLSA, VWPA, and VOWA claims as a collective action and his consent to join this collective action as representative Plaintiff is attached as **Exhibit A**.

50. The collective is defined as follows:

All Intramural Sports Employees at Liberty who provided services to Liberty's students within the three years preceding the filing of this complaint, who had their time records reduced and/or were otherwise not paid for all hours worked and/or were not paid for overtime compensation, and who file a consent form to participate in this lawsuit ("Collective Action Members").

51. The above are similarly situated because they were paid, and not paid, in the same manner, performed work in the same department under the same supervision, and were subject to identical employment policies and practices and terms and conditions of employment.

52. Numerous other individuals who performed similar work in the Intramural Sports Department in the last three years worked hours for which they were not paid and did not receive overtime pay for hours over 40 in a week.

53. Defendant has names, addresses, phone numbers, and email addresses for potential Collective Action Members in their payroll or personnel records.

54. Defendant is aware or should have been aware that the FLSA, VWPA, and VOWA required it to pay potential Collective Action Members for all hours worked and for overtime compensation during time periods that each Collective Action Member was non-exempt, including when each was paid on an hourly basis.

55. Defendant had actual and constructive knowledge that the Collective Action Members worked hours for which they were not paid, including hours in excess of forty (40) hours per week.

**COUNT I**
**Violation of the Fair Labor Standards Act**
**Failure to Pay Overtime Compensation**
**(Collective Action)**

56. Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

57. This count arises from Defendant's violation of the FLSA by failing to pay overtime to Plaintiff and the Collective Action Members when they worked over forty (40) hours in individual workweeks.

58. The Collective Action Members were not exempt from the overtime provisions of the FLSA as each was paid on an hourly basis at the times for which overtime compensation is sought for each individual.

59. Plaintiff and others similarly situated were directed by Defendant to work, and did work, over forty (40) hours in one or more individual workweeks.

60. Defendant paid Plaintiff and others similarly situated no overtime compensation.

61. Defendant violated the FLSA by failing to pay overtime to Plaintiff and others

similarly situated at one-and-one-half times their regular rate of pay when they worked over forty (40) hours in one or more individual workweeks.

62. Defendant's failure to pay Plaintiff and other similarly situated persons one-and-one-half times their regular rate for all time worked over forty (40) hours in a workweek was willful.

63. Plaintiff and all others similarly situated are entitled to back pay for all overtime hours worked during their employment with Defendant in an amount equal to one and one-half times their regular rate(s) of pay.

64. As a result of Defendant's willful and reckless actions, Plaintiff and all others similarly situated are entitled to recover liquidated damages pursuant to 29 U.S.C. § 216(b).

65. Plaintiff and all others similarly situated are entitled to recover attorney's fees pursuant to 29 U.S.C. § 216(b).

## COUNT II
### Violation of Va. Code § 40.1-29.2
### (Virginia Overtime Wage Act Collective Action)

66. Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

67. Defendant has knowingly violated the Virginia Overtime Wage Act, Va. Code § 40.1-29.2, by failing to pay overtime to Plaintiff and the Collective Action Members when they worked over forty (40) hours in individual workweeks.

68. Plaintiff and all others similarly situated were not exempt from the overtime provisions of Va. Code § 40.1-29.2 as each was paid on an hourly basis at the times for which overtime compensation is sought for each individual.

69. Plaintiff and others similarly situated were directed by Defendant to work, and did

work, over forty (40) hours in one or more individual workweeks.

70. Defendant paid Plaintiff and others similarly situated no overtime compensation.

71. Defendant violated Va. Code § 40.1-29.2 by failing to pay overtime to Plaintiff and others similarly situated at one-and-one-half times their regular rate of pay when they worked over forty (40) hours in one or more individual workweeks.

72. Defendant's failure to pay Plaintiff and other similarly situated persons one-and-one-half times their regular rate for all time worked over forty (40) hours in a workweek was willful or knowing.

73. Pursuant to Va. Code §§ 40.1-29(J) and 40.1-29.2, Plaintiff and all others similarly situated are entitled to recover payment of their unpaid overtime wages, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs. Further, Defendant's violation was a "knowing" one thus entitling the Collective Action Members to recovery of triple damages for the period July 1, 2021 through June of 2022.[1]

## COUNT III
### Violation of Va. Code § 40.1-29
### (Virginia Unpaid Wages Collective Action)

74. Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein.

75. Defendant knowingly violated Va. Code § 40.1-29 by failing to pay Plaintiff and all other similarly situated persons the regular wages for necessary and compensable time spent working for Defendant.

76. Plaintiff and other similarly situated persons had their hours on their time records

---

[1] A copy of Va. Code § 40.1-29.2 or VOWA as it existed between July 1, 2021 through June of 2022 is attached hereto as Exhibit B.

reduced.

77. Pursuant to Va. Code § 40.1-29(J), Plaintiff and other similarly situated persons are entitled to recover their unpaid wages, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs. Further, Defendant's violation was a "knowing" one thus entitling Plaintiff and other similarly situated persons to recovery of triple damages.

WHEREFORE, Plaintiff, on behalf of himself and the Collective Action Members, requests the following relief against Defendant:

A. That the Court conditionally certify this action as a Collective Action under the FLSA, VWPA, and VOWA and order that Court-approved notice be issued to putative Collective Action Members;

B. All unpaid regular and overtime compensation due to Plaintiff and the Collective Action Members;

C. Liquidated damages equal to the unpaid regular and overtime compensation due to Plaintiff and the Collective Action Members;

D. Treble damages under Va. Code § 40.1-29(J) for the VWPA and VOWA claim, where available;

E. Reasonable attorneys' fees and costs incurred in filing and prosecuting this lawsuit;

F. Interest; and,

G. Such other relief as the Court deems appropriate.

**Jury Demand**

Plaintiff demands a trial by jury.

Respectfully Submitted,

KEVIN FORTIER, individually on behalf of himself, and on behalf of all others similarly situated,


By:____/s/_____
Brittany M. Haddox (VSB No. 86416)
L. Leigh Rhoads (VSB No. 73355)
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA 24018
Tel: (540) 283-0802
brittany@strelkalaw.com
leigh@strelkalaw.com

Zev H. Antell (VSB No. 74634)
Craig J. Curwood (VSB No. 43975)
BUTLER CURWOOD, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Tel: (804) 648-4848
zev@butlercurwood.com
craig@butlercurwood.com

*Counsel for Plaintiffs*